## DRUMRIGHT HOTEL CO. et al. v. FRATES CO.

No. 25710. Jan. 28, 1936.

Chas. L. Yancey, G. C. Spillers, Donald L. Brown, and E. M. Calkin, for plaintiffs in error.

Kleinschmidt & Johnson and G. Ellis Gable, for defendant in error.

PER CURIAM. In the year 1928, one A. J. Wakefield was engaged as a soliciting agent for the A. J. Frates Company, which was a general insurance agency in Tulsa and representing a number of companies. In April, 1928, Wakefield died, leaving considerable property owned by himself and his wife (now the plaintiff in error, Esther O. Chaney). The Frates Company was carrying the insurance on these properties at the time of Wakefield's death. About the latter part of the year 1929, Mrs. Chaney entered into some sort of deal with the Frates Company in connection with her own insurance and with the further view of writing certain other insurance business for them.

With regard to the writing of business other than on the own property of Mrs. Chaney, Mr. Frates testified that it was his agreement with her that she should guarantee the payment of the premiums on any policy procured by her and on which she drew a commission. His testimony in this respect was as follows:

"Q. Now, in regard to your agreement with her in regard to her liability for the premiums, did she agree to guarantee the premiums; what conversation was had in that regard? A. Well, yes, she knew the premium must be paid on the account she solicited. Q. Did she agree to guarantee the account for certain policies, certain policyholders in which she had the policies written? A. Yes."

The testimony of Mrs. Chaney on this point was a categorical denial of that of Mr. Frates, and there was sharp disagreement between Mrs. Chaney and the officers of the plaintiff as to the motive and terms of their arrangement, but the whole record would lead to the conclusion that the principal moving consideration in the mind of Mrs. Chaney was to get the benefit of an agent's commission as rebate on the insurance on her own properties. Mrs. Chaney's testimony on this point was as follows:

"I told Mr. Frates I merely wanted a commission on my own personal property business, and I probably could throw other business to the company, and I would be glad to do it, and he said that would be satisfactory. I told him I would like to get this consideration for my own property, get the commission off, and he asked me what kind of an arrangement I wanted and I told him I thought I should have a commission on my own personal business. * * * I had no idea of going in the insurance business as agent, and told him I was simply going to use my influence to get insurance that might come my way."

At any rate, Mr. Frates and Mrs. Chaney made a deal, and the company procured a soliciting agent's license in her name from the State Insurance Commissioner.

The record does not reflect the exact date of the marriage of the defendant to her present husband, B. E. Chaney, but the certificate of the Insurance Commissioner shows that an agent's license was issued to her in the name of Esther O. Chaney as early as September 6, 1929, and the insurance account of the B. E. Chaney Realty Company was opened up on the 23rd day of January, 1930, and the earliest item that appears on the Drumright Hotel account is of date the 16th day of June, 1930. Mrs. Chaney was a stockholder in the Drumright Hotel, and her husband (B. E. Chaney) testified that he procured the issuance of the insurance policies on the hotel property which are involved herein. Mrs. Chaney testified about going over the affairs of the Drumright Hotel Company with her husband (B. E. Chaney), but denies that she had anything to do with the writing of the insurance on that property. The B. E. Chaney Realty Company account was made up of properties which had formerly been insured in the names of Mrs. Chaney and her former husband (Wakefield), and which were transferred to an account in the name of B. E. Chaney Realty Company after her marriage to Chaney. As to both the Drumright Hotel account and the B. E. Chaney Realty Company account, Mr. Frates testified as follows:

"Q. At whose request did you write this business? A. At the request of Mrs. Chaney."

The premiums on certain policies written in the name of the Drumright Hotel Company and the B. E. Chaney Realty Company not having been paid, an action was brought for these unpaid premiums jointly against the hotel company and Mrs. Chaney, and another action was brought against Mrs. Chaney alone for the unpaid premiums on the B. E. Chaney Realty Company policies. The actions were consolidated by agreement in the trial court and a jury was

waived, and judgment was rendered against Mrs. Chaney in both cases, and she has appealed to this court. No appeal was perfected by the Drumright Hotel Company, and it will not be further noticed in this opinion. The parties will be referred to as they appeared in the trial court.

The actions were pitched by the plaintiff upon the theory that Mrs. Chaney had guaranteed the premiums on all policies procured by her, and also the allegation of a general custom in the insurance business that the soliciting agent guaranteed the payment of the premium on any policy written by him. The proof offered by the plaintiff failed to sustain this last theory of custom of liability on the part of the soliciting agent for the payment by him of the premium on policies procured or written by him, but the trial court rendered judgment against the defendant upon a finding by him that she had made a specific oral agreement to pay such premiums. In passing upon the cases, the trial court said:

"I am going to find for the plaintiff in this case; in both cases. I am not basing my decision upon the custom pleaded in these cases, but simply on the evidence whether there was or was not an agreement to pay the premiums."

The defendant bottoms error on appeal upon her contention that the testimony of Frates above quoted is squarely within the statute of frauds. Counsel state their contention in this respect in the following language:

"An oral promise made by the soliciting agent of the insurer guaranteeing to the insurer or its general agent the payment of all earned premiums is a collateral undertaking and within the statute of frauds."

The shortest and most direct holding quoted by defendant to sustain this contention is from the case of Canmann v. Brunswick, 3 Mo. App. 586, where the court said:

"A verbal undertaking by a broker selling on commission, to guarantee all sales, is a collateral undertaking and is within the statute of frauds."

Defendant also specifically relies upon the cases of Cales v. Gray, 105 Okla. 54, 231 P. 300, and Egolf v. Oklahoma Press Publishing Co., 111 Okla. 19, 238 P. 208.

If the premiums involved had been entirely outside of the personal interests and business of Mrs. Chaney, a very different question would be presented, and the plaintiff in error might well prevail upon the rule contended for. However, the relationship of the parties and the manner of handling the charges, credits, accounts, and business generally tend to show that both the Drumright Hotel account and the B. E. Chaney Realty Company account were that kind of business which was treated as the personal interest and business of the defendant, and that the insurance was written on the credit of her personal liability. The Drumright Hotel had burned before the bringing of the action on that account, and while it is not entirely clear what the interests of Mr. Chaney and Mrs. Chaney were in that loss at the time it was sustained, it was testified by Mr. Frates that the proofs of loss were held up in his office for the reason that the premiums had not been paid, and that Mrs. Chaney came to his office very much agitated about the holding up of the proofs and again agreed to pay the premiums if he would release the proofs.

As to the B. E. Chaney Realty Company premiums, these policies covered properties which had been owned by the defendant and her former husband, Wakefield, at the time of his death, and, before her marriage to Chaney, the insurance had been charged to the personal account of Mrs. Chaney. It does not appear at what time this business was put in the name of the B. E. Chaney Realty Company, or what were the ins and outs of the business affairs of the defendant and her second husband after their marriage, but one of the checks which was introduced in evidence by Mrs. Chaney, and which went to her personal insurance account with the Frates Company, was signed "B. E. Chaney Realty Company, by B. E. Chaney, Agt., by Esther O. Chaney, Pres." Considerable light is also thrown on the inter-relationship of the parties and the accounts by the transfers of charges and credits on the two accounts sued upon.

Regardless of the theory of the statute of frauds as applied to policies procured by Mrs. Chaney outside of her personal business (and this case involves no such entirely outside accounts), there is ample evidence that the particular accounts involved in this appeal were within the class of business considered by the parties as the personal business of Esther O. Chaney and that the policies were written upon her direct credit and liability.

The judgment appealed from is affirmed.

The Supreme Court acknowledges the aid of District Judge E. A. Summers, who assisted in the preparation of this opinion.

The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter, the opinion, as modified, was adopted by the court.

McNEILL, C. J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.